UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-14427-Civ-GRAHAM
    (07-14051-Cr-GRAHAM)
MAGISTRATE JUDGE P. A. WHITE

ANGELO BRUNO GRECO,                    :

          Movant,                      :

v.                                     :         REPORT OF
                                                 MAGISTRATE JUDGE
UNITED STATES OF AMERICA,              :

          Respondent.                  :
_____

### Introduction

     This matter is before this Court on the movant's timely filed
motion to vacate pursuant to 28 U.S.C. §2255, attacking his
conviction and sentence for use of a facility and means of
interstate commerce to persuade, induce, or entice a minor to
engage in sexual activity and use of a facility and means of
interstate commerce to transfer obscene matter to a minor, entered
following a guilty plea entry in case no. 07-14051-Cr-Graham.

     The Court has reviewed the motion with attached memorandum of
law (Cv-DE#1), the government's response with multiple exhibits
(Cv-DE#10), the movant's traverse (Cv-DE#14), the Pre-sentence
Investigation Report (PSI), and all pertinent portions of the
underlying criminal file.

### Claim Raised

     The movant's §2225 motion with supporting memorandum is a
lengthy, convoluted document that is difficult to decipher. This
court, recognizing that the movant is *pro se,* has afforded the
movant liberal construction pursuant to Haines v. Kerner, 404 U.S.

419 (1972). As can best be extrapolated from these filings, the movant raises the following claims:

**1[1]. Ineffective Assistance of Counsel throughout the Judicial Process.**

A. The movant was denied effective assistance of counsel when his lawyer during the plea stage when:

1. counsel ignored his repeated requests to go over the sentencing guidelines by continuously stating that he had done so and the guideline range was 5-7 years (Cv-DE#1:5);

2. counsel led him to believe that there existed an agreement with the government of between 5-7 years as long as he made no objections to relevant conduct (Cv-DE#1:5);

3. counsel failed to make an independent examination of the facts, circumstances, pleadings and laws involved in the criminal charge (Cv-DE#1:5);

4. counsel failed to understand the charge, the enhancements to the charge, and the consequences of the charge (Cv-DE#1:5);

5. counsel failed to inform him of the true nature of the charges, or that the charge could be enhanced by aggravating factors (Cv-DE#1:6);

---

[1]The grounds are numbered to the extent practicable, as they appear in the movant's convoluted pleading. For purposes of clarity, the undersigned has referenced the page number within the document where the claim is set forth by the movant.

2

6. counsel failed to request a PrePlea P.S.R. and failed to advise him that such a request could be made (Cv-DE#1:6);

7. counsel failed to get alleged government promise as part of the plea deal (Cv-DE#1:6);

8. counsel failed to make him aware that he could have participated in his discussions with the government (Cv-DE#1:6);

9. counsel failed to advise that he could plea out in front of the judge without a plea deal and therefore preserve most of his rights (Cv-DE#1:6);

10. counsel informed him that the appeal waiver was a standard appeal waiver that pertained to all plea agreements (Cv-DE#1:6);

11. counsel advised him that even though the appeal waiver allowed the judge to sentence him up to the statutory maximum, the judge would not do that and instead would sentence him within the guideline range of 5-7 years (Cv-DE#1:6);

12. counsel assured him that he could appeal any sentence over the guideline range of 5-7 years even if he had an appeal waiver in the plea agreement (Cv-DE#1:7);

13. counsel advised him that relevant conduct was not a factor of the charge and at most would add one extra year to the guideline range of 5-7 years (Cv-DE#1:7);

14. counsel led him to believe that as long as he did not dispute any relevant conduct, then he would get between 5-7 years. However, if he disputed relevant conduct, then not only would he not get between 5-7 years, the government would have a mini-bench trial and as a result, he would get 20-25 years and up to the statutory maximum (Cv-DE#1:7);

15. counsel failed to mention <u>Apprendi</u> and how any conduct that enhanced a sentence would have to be put before a jury and proven beyond a reasonable doubt (Cv-DE#1:7).

## B. The movant was denied effective assistance of counsel during the plea colloquy when:

1. counsel, about three minutes prior to change of plea, produced a new revised plea agreement demanding that he sign the new agreement without giving him to review it (Cv-DE#1:7);

2. counsel repeatedly put his hand over the microphone during the plea colloquy and continuously told him that he was not admitting to anything when he kept telling counsel that what was being said was not factually accurate (Cv-DE#1:8);

3. counsel failed to bring up Rule 11(c)(1) violation (Cv-DE#1:8).

4. counsel failed to bring to the court's attention any mitigating factors (Cv-DE#1:8).

C. The movant was denied effective assistance of counsel after the plea colloquy, but prior to sentencing when:

1. counsel failed to return phone calls by his wife and any written attempts of communication by him. Calls and written attempts pertained to request that counsel meet with him to address 18 U.S.C. §3553(A) sentencing factors (Cv-DE#1:8);

2. counsel failed to act on my request that he should be subjected to a polygraph to verify whether he was being truthful in his assertion that he was not lying about certain relevant conduct (Cv-DE#1:8);

3. counsel failed to act on his request that he should be examined by a psychologist to ascertain if he was a threat to anyone, and if he was predisposed to the type of behavior he was charged with (Cv-DE#1:8);

4. counsel failed to object to clearly erroneous information contained in the PSR (Cv-DE#1:9);

5. counsel failed to follow his request asking that objections be made (Cv-DE#1:9);

6. counsel failed to meet with him immediately when the PSR showed that he faced 210-262 months in custody instead of the 5-7 years that he was promised for not objecting to relevant conduct during the plea colloquy (Cv-DE#1:9);

7. counsel failed to prepare a sentence memorandum with him (Cv-DE#1:9);

8. counsel failed to adequately prepare for the sentencing hearing (Cv-DE#1:9);

9. counsel failed to subject the government's case to meaningful adversarial testing (Cv-DE#1:9).

## 2. Ineffective Assistance of Counsel due to Conflict of Interest between retained Counsels.

A. The movant was denied effective assistance of counsel, between retained counsels, when:

1. counsels business conflict of interest was detrimental to his criminal case (Cv-DE#1:10);

2. counsels failed to advise him of the fact that they were no longer partners (Cv-DE#1:10);

3. counsels led him to believe that he was being represented by both when that was no longer the case (Cv-DE#1:10);

4. neither counsel was present at the plea colloquy (Cv-DE#1:10);

5. counsel, who was at the plea colloquy, was ineffective due to a conflict of interest that required him to be at the state court at or around the same time he was scheduled to represent him in federal court (Cv-DE#1:10).

## 3. The District Court violated the movant's Due Process rights when it failed to comply with Rule 11(c) during the Plea Colloquy. (Cv-DE#1:11).

**4. Jurisdictional Defect Pertaining to Indictment Returned by Grand Jury.** (Cv-DE#1:12).

**5. Sentence Violates Sixth Amendment under <u>Booker</u>, <u>Blakely</u> and <u>Apprendi</u>.** (Cv-DE#1:13).

**6. Sentence Imposed violated Rule 32(i)(4)(B).** (Cv-DE#14).

Attached to his memorandum of law, the movant provided an affidavit, which, in essence, repeated the allegations set forth in his motion to vacate.

Then, on March 18, 2009, the movant filed a motion to submit a traverse, which listed new claims, including:

**7. The movant's guilty plea was involuntarily and unknowingly entered into.** (Cv-DE#14:3).

**8. Neither the indictment, the plea agreement nor the plea colloquy, state the true nature of the charge for which he pleaded guilty.** (Cv-DE#14:16).

**9. The movant is actually innocent of the relevant conduct.** (Cv-DE#14:18).

<u>Factual History</u>

During the change of plea hearing, the movant stipulated to the following factual proffer:

In June of 2006, the Chateaugua Police Department in Quebec, Canada initiated an investigation after receiving a complaint from Kimberly LaChance and her husband, Zolton, that inappropriate instant messaging communication had taken place between their under-aged daughter and the defendant, Angelo Greco, the child's uncle by marriage.

For purposes of today's plea proffer, the child will be referred to as MP.

On June 30th of 2006, Detective Monpettit of the Chateaugua Police Department interviewed MP's grandmother, Mary Ann LaChance.

During December of 2005, MP was residing with her grandparents, and LaChance stated that on or about December 20th of 2005, she discovered on her computer, which she referred to as an e-mail conversation, now known to be an instant message chat, on Microsoft Network between her son-in-law, the defendant, who was then 42 and her grand daughter [sic], MP who was 14 years old at the time.

The chat that she found had taken place on December 20th of 2005. And by way of synopsis, went as follows:

During the chat, the defendant asked MP to entertain him and told her that she had a nice neck and asked her to lean back.

The IM text indicated that both the defendant and MP were using Web cams, and the defendant had a visual image of MP while they were chatting.

The defendant asked MP to entertain him. And when MP asked what she should do, the defendant told her to pull her top down.

At that point in the conversation MP stated that Nanny was going to be bringing the telephone back to her shortly.

The tone of the chat changed for several minutes, but shortly thereafter resumed when MP resumed, when MP says 'I'm back,' and the sexual chat continued.

The defendant first instructed MP to fix the cam. He then told MP to touch her breasts, squeeze them, and asked MP what she wanted between her breasts.

Later, the defendant typed that he wanted to put his HC between them and states that, 'I will when you are here. I would make them bigger. Feel them. That's it. Play with them. Show everyone who is watching. Show them how much you love it. What do you want?'

The defendant during the chat also asked MP if she wants to see something and asked her if she wants it.

He tells MP that she is driving him crazy, and then tells MP to call him on the phone. There is then a 30 minute break in the instant message chat. And when the chat resumed, the defendant typed, 'Nice pic. Now we need one with no clothes on. Ah, you did it already. You bad, bad girl, you.'

8

MP replied, 'Did it today,' and the defendant typed back, 'Did you now? You bad, bad girl. I hope you deleted it.'

According to LaChance, after finding the conversation, she e-mailed the defendant asking him to explain the sexually explicit chat that she had discovered.

Two days later the defendant called LaChance and confirmed that he was chatting on the computer with MP, but claimed that the conversation was only a ruse between him and MP to determine if the grandmother was spying on the child.

LaChance also stated that she discovered a cell phone in MP's possession. According to LaChance, MP told her that the defendant had arranged for his friend in Canada to purchase the cell phone and mail it to the defendant in Florida.

The defendant had then given the cell phone to MP when she vacationed at the defendant's Florida home during the spring of 2006.

It wasn't until after the spring of 2006 trip that the grandmother, Ms. LaChance, finally alerted MP's parents to the instant message chat that she found on her computer.

After reading the chat, MP's parents went to the Canadian police who opened up an investigation.

They in turn asked for assistance from the Port St. Lucie Police Department where the defendant resided, and then ICE, the Bureau of Immigration & Customs Enforcement, began an investigation here in Florida.

On September 1st of 2006, this court issued a search warrant to search the defendant's home located at 2451 Southwest Morning Side Boulevard in Port St. Lucie, Florida.

The warrant was served on September 7th of 2006. During the execution of the warrant, agents interviewed the defendant at his home.

At the time of the interview, law enforcement only had the one chat from December 20th, 2005 in their possession.

At the time of the search, the defendant was in possession of numerous computer devices, as he was in the computer business.

The defendant advised the officers that he no longer had the computer hard drive he had been using when he chatted with MP because he had thrown it away.

During portions of the interview, the defendant's wife was present. When she was present and the defendant was asked about the December 20, 2005 chat, the defendant admitted to the conversation with MP, but continued to assert that chat was just a ruse to see if the grandmother was spying.

After his wife exited the residence, the defendant admitted that the

IM conversation had not been a ruse, and that he formulated the cover story to avoid material problems with this wife following LaChance's discovery of the chat.

Referring to the instant message conversations between himself and MP, the defendant stated having inappropriate conversations. 'I am guilty of that.'

The defendant also admitted to receiving inappropriate pictures of MP, but could not recall if any of the child were naked.

Following the interview, the agents arrested the defendant for violations of Florida law where he remained in custody on state charges until he was indicted by a federal grand jury and transported to federal custody in July of 2007.

As the investigation proceeded in Canada, the Canadian police conducted several interviews with MP.

During an initial interview, MP denied that anything sexual had happened between her and her uncle.

However, during later interviews MP admitted that she had traveled to Florida and stayed with the defendant, his wife and children on several occasions from 2001 through 2006.

Immigration records corroborate this information, demonstrating the trips taken by MP from Canada to Florida during those years.

During the majority of these trips to Florida, MP was cared for her by her aunt Lisa and her uncle Angelo, the defendant. Her own parents did not accompany her on these trips.

MP advised that she looked forward to these trips because she was very close to her aunt, uncle and cousins, and she also looked to her aunt and uncle for guidance and advice with school work and other events going on in her life.

MP had stated that eventually she and her uncle, the defendant, became very close. And even after she had returned to Canada, they would communicate by e-mail and instant messaging or over the phone numerous times every day.

During many of these communications with her uncle, MP stated that the defendant would council her in a positive way by telling her to stay in school and do her homework.

According to MP, she felt very close to the defendant and began trusting him more than any other person in her life.

The defendant would discourage MP from drinking and doing drugs, and they would talk about boys she knew and her relationships with them.

However, at some point in their relationships things progressed to a different level.

The conversations with her uncle became sexual, and her trips to Florida progressed to a sexual level as well.

According to MP, starting as early as 2004, when she was 13 years old, and continuing until March of 2006, when she was 15, she and her uncle engaged in sexual activity during these Florida trips.

The sexual activity would take place in the garage of the house, which was the defendant's work area, or occasionally in the bedroom of her cousin Kyle, the defendant's son.

According to MP, the sexual activity between them would progress each trip. She was advised when she was 13 and 14, the defendant would touch her under her clothing and have her touch him under his clothing until he ejaculated.

The defendant would move her hands to where he wanted them to be.

During the 2006 spring break trip, when MP was 15, the defendant had MP perform oral sex on him on several occasions.

According to MP, it was during the last trip that the defendant became more forceful with her; on one occasion pulling her hair and pushing her head down toward his genitals.

When she tried to stand up, he pushed her head down again. When asked, MP indicated she did not want to perform sexual acts with her uncle, but did not relay her reluctance to him or refuse to participate, as she was afraid that if she refused, she would no longer be able to visit with her aunt cousins.

She was also afraid of losing her relationship with her uncle, and that if she refused to do what he wanted, he would shut her out of his life.

MP also said the reason she did not admit what had happened between her and her uncle when the Canadian police first questioned her was because the defendant told her not to say anything to anyone, and she was scared.

According to MP, the defendant had told her he would shut her out if she had told anyone what was going on between them, and also told her that if she told anyone, he would deny it and no one would believe her.

As part of the investigation, the computer MP used while communicating with the defendant was examined.

Forensic examination revealed additional instant message communications between the defendant and MP from 2005, as well as numerous e-mail conversations between them dating back to 2004.

The 2004 e-mails were very detailed and demonstrate how the defendant was attempting to control MP in every aspect of her life, most notably her relationships with boys.

The 2005 instant message communications contained sexually explicit conversations between the defendant and MP.

In addition, the communications revealed that the defendant transmitted or attempted to transmit pornographic materials to MP

11

via the Internet, in violation of federal law.

According to the chat, the defendant transmitted pornographic images to MP and asked her to watch it, and in the chat he tells her, as she is watching it, he tells her to put her fingers in her mouth, push them as deep as they go and move them in and out as she is watching.

The retrieved communications revealed that the defendant unsuccessfully attempted to transmit a video entitled 'Black girl fucking horse' to MP.

Although the retrieved chat says the transmission was unsuccessful, according to MP, the defendant had previously sent her this pornographic video which shows a woman engaging in sexual intercourse with a horse.

MP also advised that the defendant sent her other pornographic videos, and he wanted her to watch as well.

According to MP, after the defendant sent her the pornographic videos, he would ask her if she had watched the videos, and they would discuss them.

MP also advised that following their sexually explicit conversations, the defendant would regularly remind her to delete them from her computer so they could not be retrieved by anyone. And that will conclude the proffer

(Cr-DE#35).

## Procedural History

The procedural history of the underlying criminal case reveals that a criminal complaint was filed on July 17, 2007. (Cr-DE#1). Thereafter, on August 2, 2007, an indictment was filed, charging the movant with use of a facility and means of interstate commerce to persuade, induce, or entice a minor to engage in sexual activity, in violation of 18 U.S.C. §2422(b) (Count One) and use of a facility and means of interstate commerce to transfer obscene matter to a minor, in violation of U.S.C. §1470 (Count Two). (Cr-DE#7).

On September 10, 2007, the movant entered into a negotiated plea agreement with the government and entered a guilty plea before Magistrate Judge Frank J. Lynch, Jr. (Cr-DEs#20,21). Subsequently,

District Judge Donald L. Graham adopted the report and recommendation of the magistrate judge accepting the movant's guilty plea. (Cr-DEs#23,24).

A PSI was prepared prior to the sentencing hearing, wherein the probation officer determined that Counts One and Two are not grouped together because the conduct involved in each count represents separate and distinct harms. (PSI¶29). Moreover, pursuant to U.S.S.G. §3D1.1(a)(3), the Court shall determine the combined offense level by taking the offense level applicable to the group with the highest adjusted offense level and increasing that adjusted offense level by the appropriate number of levels, in accordance with the units assigned. (PSI¶30).

The probation officer further determined that the base offense level for the child enticement charge was 30. (PSI§31). However, because the offense involved conduct described in 18 U.S.C. §2241(a), the offense level was increased by four levels. (PSI¶32). Also, because the victim had attained the age of 12, but not the age of 16, the base offense level was increased by two levels. (PSI¶33). In addition, because the victim was in custody, care, or supervisory control of the defendant, the base offense level was increased by two levels. (PSI¶34). Finally, because the offense involved the use of a computer to persuade, induce, entice or coerce a minor to engage in prohibited sexual conduct, the base offense level was increased by another two levels. (PSI¶35). Thus, the movant's base offense level for Group One was set at 40. (PSI¶39).

The base offense level for the transferring obscene matter to a minor is 10. (PSI¶40). However, because the distribution involved distribution to a minor that was intended to persuade, induce,

entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, the base offense level is increased by seven levels. (PSI¶41). Additionally, because the offense involved the use of computer, the base offense level is increased by two levels. (PSI¶42). Thus, the adjusted base offense level for Group Two is 19. (PSI¶46).

The probation officer further determined the combined adjusted offense level is 40. (PSI¶52). However, after the removal of three levels for adjustment of responsibility, the total base offense level is 37. (PSI¶¶54-56). The movant had zero criminal history points and a criminal history category of I. (PSI¶60). Based on a total offense level of 37 and a criminal history category of I, the guideline range is 210 to 262 months. (PSI¶90).

The sentencing hearing was held on December 10, 2007, wherein the movant was sentenced to 222 months imprisonment, which consisted of 222 months as to Count One and 120 months as to Count Two, to be served concurrently, followed by life supervised release as to Count One and 3 years as to Count Two, along with special conditions and a $200 special assessment. (Cr-DE#25). The judgment was entered by the Clerk on December 21, 2007. (Cr-DE#26). Thereafter, on April 28, 2008, the movant filed a notice of appeal, which was dismissed, sua sponte, for lack of jurisdiction on June 18, 2008. The movant never filed a petition for certiorari. For purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case became final at the latest on September 18, 2008, when time expired filing a petition for writ of certiorari, ninety days following affirmance of the

movant's conviction on direct appeal.[2] At the latest, the movant
was required to file this motion to vacate within one year from the
time the judgment became final, or no later than September 18,
2009. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). The
movant timely filed his §2255 motion on December 10, 2008. (Cv-
DE#1).

## Waiver of Claims

It should further be noted that the movant waived his right to
contest all non-jurisdictional defects and defenses, when he
entered a knowing and voluntary guilty plea. Where a criminal
defendant enters a knowing, voluntary, and intelligent plea of
guilty to an offense or offenses, he waives, or more accurately,
forfeits all non-jurisdictional defects and defenses. See Smith v.
United States, 447 F.2d 487, 488 (5th Cir. 1971), citing, Hayes v.
Smith, 447 F.2d 488 (5th Cir. 1971); see also, Wilson v. United
States, 962 F.2d 966 (11th Cir. 1992); United States v. Broce, 488
U.S. 563 (1989); United States v. Glinsey, 209 F.3d 386, 392 (5th
Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240
(5th Cir. 1991). "This includes claims of ineffective assistance of
counsel except insofar as the ineffectiveness is alleged to have
rendered the guilty plea involuntary." Id. To enter into a
voluntary plea, the defendant must understand the law in relation
to the facts. McCarthy v. United States, 394 U.S. 459 (1969).  In
this case, the movant disputes that his plea was unknowingly and

---

[2]The Supreme Court has stated that a conviction is final when a judgment
of conviction has been rendered, the availability of appeal exhausted, and the
time for a petition for certiorari elapsed or a petition for certiorari finally
denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United
States v. Kaufman, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by
a United States court of appeals, a petition for writ of certiorari must be filed
within 90 days of the date of entry. The 90 day time period runs from the date
of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13;
see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

involuntarily entered.

Moreover, to ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. Id. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005). In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

Id.

Review of the plea agreement reveals that the movant waived, inter alia, his right to appeal the sentence imposed. (Cr-DE#21).

16

The Eleventh Circuit has held that "[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005); see also, Leach v. United States, 171 Fed.Appx. 765 (11th Cir. 2006); Johnson v. United States, 2007 WL 4615236 *5-6 (S.D. Fla. 2007). As concluded correctly by the Williams court, to hold otherwise would permit the movant "to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Williams v. United States, supra. A waiver is knowing and voluntary if 1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or 2) the record demonstrates that the defendant understood the full significance of the waiver. Id.

Thus, the movant's claims, as listed above, in which he faults counsel for failing to challenge numerous issues regarding his sentence are covered by the appeal waiver and therefore not subject to collateral attack in this proceeding. The movant alleges in this collateral proceeding that his guilty plea in this case was unknowingly and involuntarily entered into. Notwithstanding his allegations, the record clearly establishes that the plea, which included an appellate waiver, was knowing and voluntary. (Cr-DE#35). At that time, the movant acknowledged under oath[3] that he was satisfied with counsel's representation, and that he had

_____

[3]Statements at the time of a plea colloquy are given a strong presumption of truth. Blackledge v. Allison, 431 U.S. 63 (1977). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. Machibroda v. United States, 368 U.S. 487 (1962).

discussed the information, the plea agreement, the government's case, and the nature of the charges with counsel prior to the change of plea. (Id. at 6). The movant further acknowledged that he understood that, as part of the plea agreement, he was giving up his right to appeal the sentence imposed, or the manner in which the sentence was imposed. (Id.:8-10). The movant denied being promised anything other than that which was contained in the plea agreement, and further denied being coerced or threatened into changing his plea. (Id.:10). The movant also agreed with the government's proffer of facts. (Id.:11-22).

As previously narrated above, pursuant to the terms of the negotiated plea agreement, after the movant's acknowledgment of the content therein, he waived any rights to appeal his sentence, or the manner in which the sentence was imposed. (Cr-DE#s:8-9).

To the extent the movant means to argue that he was unaware of the consequences of his plea, that claim is also belied by the record. As noted above, the Rule 11 proceeding thoroughly addressed the consequences of the guilty plea, the maximum and minimum penalties, and the sentence appeal waiver. There is nothing of record to suggest that the movant did not understand the significance of the waiver of appeal. The record reveals that the waiver did not result in an unlawful denial of his right to appeal, but was rather a part of a lawful, enforceable agreement between the movant and the government. Under the circumstances presented here, the movant is not only precluded from challenging the manner in which his sentence was imposed, but is also precluded from challenging his sentence in the guise of an ineffective assistance of counsel claim. Williams, supra. As such, **claims 5 and 6** will not

be addressed on the merits.[4]

<u>Discussion of Claims</u>

First, it should be noted that **claims 3 and 4,** could have been, but were not raised on direct appeal. Because the claim was not raised on direct appeal, it is procedurally barred from review in this collateral proceeding unless the movant can show cause for the default and actual prejudice, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), or a fundamental miscarriage of justice. <u>Engle v. Isaac</u>, 456 U.S. 107 (1982).

The movant, in this collateral proceeding, neither shows cause for failing to raise the issue on direct appeal nor does he show any actual prejudice as a result therefrom. Accordingly, the movant's claims are without merit and as such, they will not be addressed on the merits.[5]

Moreover, it should be noted that **claims 1, 2 and 7,** could have been, but was not raised on direct appeal. Notwithstanding, construing the argument made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claim. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. <u>United States v. Breckenridge</u>, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668

---

[4]The government addresses the barred claims on their merits, which appear to be correct, to not belabor the issues herein, this Court adopts the government's responses thereto.

[5]See note 4.

(1984); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Thus, the claim will be identified and treated in turn in this Report, <u>infra</u>.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id.</u> at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-04 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-pronged <u>Strickland</u> standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985). The movant does not claim that but for counsel's alleged deficient performance, he would not have pleaded guilty and would have proceeded to trial.

Moreover, review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of

performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11th Cir. 1994).

In **claims 1(A)(1)-(15) and B(1)-(4)** the movant raises a plethora of issues pertaining to ineffective assistance of counsel during both the pre-plea stage and the plea colloquy. However, notwithstanding the claims presented therein, all of them are not only refuted by the record, but they are also cured by the plea colloquy.

Moreover, the movant fails to identify any facts or laws to support his claims. Such a bare and conclusory allegation, bereft of record support, is subject to dismissal. <u>Tejeda v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991), cert. den'd, 502 U.S. 1105 (1992)(a movant is not entitled to habeas corpus relief when her claims are merely conclusory allegations unsupported by specifics or in the face of the record are wholly  incredible); <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).  He is therefore entitled to no relief on these claims.

Although at the end of his motion to vacate the movant provides a memorandum of law citing 13 cases, along with a synopsis of each case's proposition, he nevertheless fails to explain their applicability to the claims. As such, under these circumstances, the movant has failed to establish either deficient performance or prejudice pursuant to <u>Strickland</u> arising from counsel's performance.

In **claims 1(C)(1)-(9)**, the movant asserts he was denied effective assistance of counsel after the plea colloquy, but prior

to the sentencing hearing when counsel failed to comply with several requests and requirements the movant found necessary.

Specifically, in **claims 1(C)(1)-(3)**, the movant argues that counsel failed to return phone calls and follow through on the movant's request for a polygraph test and a psychological examination. Notwithstanding the claims made in this collateral proceeding, the movant fails to demonstrate how he was prejudiced by counsel's failure to do the aforementioned. As such, under these circumstances, even if the District Court finds that counsel was deficient for failing to return phone calls and subject the movant to either a polygraph test or a psychological examination, the movant fails to show how he was prejudiced, pursuant to <u>Strickland</u>, as a result thereof.

Moreover, in **claims 1(C)(4)-(9)**, the movant argues that counsel, in various ways, failed to adequately prepare for the sentencing hearing. Specifically, **claims 1(C)(4)-(5)**, the movant contends that counsel failed to object to clearly erroneous information contained in the PSR and failed to follow the movant's request asking for objections to be made. However, these claims are not only belied by the record and cured by the Court, but the movant fails to explain how he was prejudiced as a result thereof and fails to articulate exactly what objections counsel should have made. Also, because the movant was sentenced within the sentencing guideline range, he fails to demonstrate whether the objections, if made, would have been sustained. Thus, the movant's claims are without merit.

Likewise, in **claims 1(C)(6)-(9)**, the movant contends that counsel was ineffective when counsel failed to meet with him immediately when the PSR reflected a sentencing range of 210-262

22

months imprisonment, failed to prepare a sentence memorandum, failed to adequately prepare for the hearing and failed to subject the government's case to meaningful adversarial testing.

First, a review of the sentencing transcript reveals that the movant affirmatively answered when the District Court Judge questioned him whether he had an opportunity to review the presentence report and discuss it with his attorney. (Cv-DE#10,Ex.6:2). Moreover, when asked whether he had any questions concerning the report, the movant responded "No, Your Honor." (Id.).

Moreover, the movant fails to explain the manner in which counsel failed to adequately prepare for the hearing and any prejudice suffered as a result thereof. Also, the movant's argument is devoid of any facts or law supporting that counsel failed to subject the government's case to meaningful adversarial testing. Likewise, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation, nor to present any legal defenses at a trial or a suppression motion that he may be entitled to as it relates to his case. In fact, the movant agreed with counsel's advice which benefitted the movant because under the terms of the negotiated plea agreement, the government agreed to recommend that the court reduce the sentencing guideline level pursuant to U.S.S.G. §3E1.1(a) and (b). (Cv-DE#21).[6] Moreover, as will be recalled, the movant knowingly and voluntarily agreed as part of the negotiated written plea agreement that he was guilty of Counts One and Two. Under these circumstances, no deficient performance or prejudice

---

[6] Such a sound strategic decision should not be second-guessed in this collateral proceeding. United States v. Nersian, 824 F.2d 1294, 1321 (2d Cir.), cert. den'd, 484 U.S. 957 (1987).

has been established and the movant is therefore entitled to no relief on the claim.

In **claim 2**, the movant asserts that he was denied effective assistance of counsel due to conflict of interest between retained counsels.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense which includes two correlative rights, "the right to be represented by counsel of choice" and "the right to a defense conducted by an attorney who is free from conflicts of interest." See United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994); see also, Wood v. Georgia, 450 U.S. 261, 271 (1981).

A movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that: (1) his attorney had an actual, not speculative, conflict of interest, and (2) the conflict adversely affected counsel's performance. United States v. Novaton, 271 F.3d 968, 1010-1011 (11th Cir. 2001), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); accord, United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. United States v. Novaton, 271 F.3d 968, 1010 (11th Cir. 2001); Burden v. Zant, 24 F.3d 1298, 1305 (11th Cir. 1994).

The Eleventh Circuit has adopted a test to distinguish actual from potential conflicts in the context of joint representation of codefendants. The movant must "point to specific instances in the record to suggest an actual conflict or impairment of their

interests, make a factual showing of inconsistent interests, and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.), cert. den'd, 467 U.S. 1230 (1984); see also, Porter v. Wainwright, 805 F.2d 930, 939-40 (11th Cir. 1986); see e.g., Turnquest v. Wainwright, 651 F.2d 331, 333 (5th Cir. 1981); Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999), quoting, Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987).

Once a defendant demonstrates that a conflict of interest actually affected his representation, he need not demonstrate prejudice to obtain relief. Novaton, supra at 1010. Rather, "[p]rejudice is presumed . . . if the defendant demonstrates that . . . 'an actual conflict of interest adversely affected his lawyer's performance.'" Strickland, 466 U.S. at 692, quoting, Cuyler, 466 U.S. at 358; Burden v. Zant, 24 F.3d 1298 (11th Cir. 1994); Porter v. Singletary, 14 F.3d 554 (11th Cir. 1994).

Even if we were to assume that an actual conflict of interest existed between the movant and his attorney, the movant must show that his attorney's performance was "adversely affected" by the conflict. It is true that a movant need not show that the result of the proceeding would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. Strickland, 466 U.S. at 694. To prove an adverse effect, a defendant must: 1) "point to some plausible alternative defense strategy or tactic" that might have been pursued, 2) "demonstrate that the alternative strategy or tactic

25

was reasonable"[7] under the facts in his case, and 3) "show some link between the actual conflict and the decision to forgo the alternative strategy of defense."[8] Novaton, supra at 1011, citing Freund v. Butterworth, 165 F.3d 839, 860 (11th Cir. 1999) (en banc). In the absence of a showing of an "adverse effect," prejudice is not presumed to flow from a conflict of interest. Id.

In this case, no actual conflict or adverse effect has been demonstrated. See Smith v. Newsome, 876 F.2d 1461, 1463 (11th Cir. 1989)(holding that a lawyer's performance was not adversely affected when "joint representation did not prevent effective plea bargaining for either client."). Here, the movant has failed to establish that counsel's plea bargaining was ineffective or that he was adversely affected as a result. Consequently, the movant cannot prevail on this claim.

To the extent the movant argues that neither of his two attorneys were present at the plea colloquy, this claim is belied by the record, which indicates the name of the attorney present. (Cr-DE#35).

In **claim 7**, the movant asserts that his guilty plea was involuntarily and unknowingly entered into. This claim is merely a reiteration of the arguments raised in relation above and should be denied for the reasons expressed therein.

---

[7]Because prejudice is presumed under Strickland, 466 U.S. at 692, the movant "'need not show that the defense would necessarily have been successful if [the alternative strategy or tactic] had been used,' rather he only need prove that the alternative 'possessed sufficient substance to be a viable alternative.'" Freund, 165 F.2d at 960, citing, United States v. Fahey, 769 F.2d 829, 836 (1st Cir. 1985).

[8]In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. Novaton, supra at 1011, citing, Freund, 165 F.3d at 860.

In **claim 8**, the movant asserts that neither the indictment, the plea agreement nor the plea colloquy, state the true nature of the charge for which he pleaded guilty. This claim is also merely a reiteration of the arguments raised above and should be denied for the reasons expressed therein.

In **claim 9**, the movant asserts that he is actually innocent of the relevant conduct. The relevant conduct the movant refers to is found in PSI ¶32, wherein his base offense level was increased by four levels, pursuant to U.S.S.G. §2A3.1(b)(1), because the offense involved conduct described in 18 U.S.C. §2241(a), which states:

> (a) By Force or Threat. - Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly causes another person to engage in a sexual act -
>
> (1) by using force against that other person; or
>
> (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping;
>
> or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

18 U.S.C. §2241(a).

Moreover, a look at the sentencing guidelines applicable at the time the movant was sentenced, reflects that the guideline for violation of 18 U.S.C. §2422 is found in §2G1.3 of the guidelines. (PSI¶31). A review of U.S.S.G. §2G1.3, specifically, subsection (c), provides a cross-reference application, which states "(1) If the offense involved conduct described in 18 U.S.C. §2241(a) or (b) or 18 U.S.C. §2242, apply §2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse). "

Thus, it is evident from the movant's acknowledgment of the factual proffer during the plea colloquy, that he engaged in conduct described in 18 U.S.C. §2241 while on territorial jurisdiction of the United States. Accordingly, he was properly allotted the four level enhancement.

Moreover, the movant's protestations of innocence in this motion to vacate is without substantiation in the record. A habeas petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). He must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11th Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039(8th Cir.2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2nd Cir. 2000)(citing Schlup v. Delo, 513 U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him).

To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316. No such showing has been made here, and in fact, the movant's protestations of innocence are refuted by the record.

As will be recalled, the movant entered into a knowing and voluntary plea, after the court conducted a thorough Rule 11 colloquy. (See Cr-DE#35:Change of Plea Transcript). At that time, the movant stipulated[9] to the factual basis for the plea which amply supports his conviction. On the record before this court that movant has made no showing of actual innocence, and no fundamental miscarriage of justice has been demonstrated.

## Evidentiary Hearing

Finally, the movant's request for an evidentiary hearing on his claims should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## Conclusion

It is therefore recommended that this motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

---

[9]The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. Machibroda v. United States, 368 U.S. 487 (1962).

Signed this 1st day of May, 2009.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Angelo Bruno Greco, Pro Se
     Reg. No. 75968-004
     F.C.I. - Yazoo City
     Inmate Mail/Parcels
     P.O. Box 5000
     Yazoo City, MS 39194

     Anne Ruth Schultz, AUSA
     United States Attorney's Office
     99 NE 4th Street
     Miami, FL 33132

     Jennifer C. Millien, AUSA
     United States Attorney's Office
     505 S. Second Street
     Suite 200
     Ft. Pierce, FL 34950